I take it these are not marine mammals? This is a sealed record. Does it still need to be sealed? Well, the arguments I'm going to make today I don't think are going to reveal anything particularly controversial. So we don't have to clear the courtroom for this? No, no. Well, I have a more basic question. You can think about it in filtering your opponent and you can answer it sometime during the course of the argument. Why is this case sealed at all? I see nothing that I've read in the argument that justifies the ceiling. Well, the parties. I certainly didn't want to be in contempt of the district court. The district court sealed sealed presumably at the request of the parties. It was sealed. The arbitration proceedings were sealed. I mean, why? I can understand arbitration proceeding being sealed because that's a private proceeding. The public is not entitled to have access to arbitration proceedings. But once you come to court, it's a different matter. And you have to show some cause why it should be sealed. I haven't seen anything here. Now, can you tell me why it's sealed? It wasn't the fact that the arbitration was sealed. Is there some confidential business? Yes. Like what, for instance? Well, during the arbitration, a lot of very confidential relating to the company's business were introduced into evidence. And that was why you mean like reserves and things like that. And why is that so confident you have to file that with the with the commissioner of insurance, don't you? I think there are other matters, too. I mean, like what? Can you be specific? Well, there's a record. I think it's about 50,000 pages in all. And why is it your position this proceeding in the court of appeals has to be sealed for some reason? Are you are you ready to make a showing to that effect? Well, I didn't come here today prepared to address. Are you ready? Can you make a showing? It should be I should be sealed. Can I confirm with my clients and submit something within the next five days? Well, you know, I think there's there should be a presumption that public court proceedings are open to the public and shouldn't be sealed unless there's good cause. Well, I certainly would. So you can think about that. Think about it. I confess I did not come here today prepared to address that issue. And there are obviously a lot of other issues in the case. I find the 11th Amendment issue kind of tricky here. On the one hand, you can't sue the state government and federal court for money. On the other hand, the state government here is not defending its treasury. It's it's defending money that it holds as. Let's see, which is it? A receiver? Liquidator, Your Honor. As a liquidator. In fact, the counsel of my opponent sent the court a letter, I believe, in the last couple of weeks. Calling this court's attention to the new case, I think it's State of California versus Altus Finance Company. I believe that's the name of the case. And I thought that case really supports us because the case makes very clear that the assets of a liquidated insurance company, although title to them is possessed by the insurance commissioner, are not state funds. I'm having trouble hearing you, sir. The the money that a liquidator holds is not state deposited in the state treasury. I don't know where it's deposited, but it's not deemed to be state funds. The case is that that's the State of California versus Altus Finance Company. It was cited in a letter by my opposing counsel to this court in the last couple of weeks. And it makes very clear that those are not state funds. The state commissioner simply holds them for purposes of liquidation to distribute them to whoever would be entitled to them. They're not state funds and whatever judgment issues in this case can have an effect on the state treasury. That's correct. Well, there's no no cause for immunity. That's exactly our position, Your Honor. Now, if we get past that, it looks to me like this is just the kind of case that arbitration is invented for. And a highly technical case where the parties agreed beforehand that that their disputes should be arbitrated. A huge record, a huge amount of time devoted to hearings. And the notion that we're going to say that it is so irrational as to be outside the standard, it seems like a stretch. Why do you meet the standard? Well, first of all, Your Honor, we are not asking this court to reweigh the evidence and come to a conclusion different than the arbitrators. The arbitrators made a single factual finding, namely that the superior national entities should have acted in a more open and forthright fashion. And then the arbitrators then, the majority of the arbitrators. They didn't say that there was a fraud committed. They said that they that they could have been more forthright. That was their sole factual finding. They should have acted in a more open and forthright fashion. And then the arbitrators purported to reduce our, my client's liability by 10 percent, which, as the record reflects, works out to about $100 million. Now, the question is, this Court has presented purely not with a factual issue. I'm not asking the Court to reweigh the evidence, but simply determine what is the legal effect of that factual determination. And that presents a pure, pure legal question. And when you say the legal effect of that factual determination, the test, the standard against what you judge the legal effect is whether it exhibits a manifest disregard of the law. That's correct, Your Honor. And how does it exhibit a manifest disregard of the law? Well, it's our position, first of all, that that finding as a matter of law establishes that there was a failure to disclose material information during the. Let's assume that. So. Yes. Then what? Well, then, under California law, that, under Insurance Code Sections 530, 531, and 622, as a matter of law, any failure to disclose material information as a matter of law entitles the other party. I don't see why that even gets you to first base. Under Article 25 of your arbitration agreement, Paragraph B, it says the arbitrators, quote, may abstain from following the strict rules of law. Yes. Close quote. We've addressed that in our brief. And my position in following the Mastrobono case of the United States Supreme Court is that this Court has to construe both provisions. There was also the provision that this contract should be interpreted in accordance with California law, and both parties agree that California law in this case governs the party's right to rescission. In fact, I was just going through the record last night and I noted that page and I'll find this in one second here. It's at page 1614 of the Excerpts of Record. And both sides agreed, the superior national entities agreed, that that provision controls this case, including the rights and remedies, including the right to rescission. And the only way I submit, and as I've explained in the brief, to reconcile what's called the Honorable Engagement Clause, that the arbitrators are not required to follow the strict requirements of law, the only way to reconcile that is with the provision that California law controls. And as the Mastrobono case points out, you have to find a way to give meaning to both provisions and not read either out of the contract. I submit this to say that the substantive rights of the parties are controlled by California law, but the arbitrators are freed from following the strict rules of law as to procedure and evidence. That gives meaning to both clauses. So I think that those insurance code provisions do control this case, and if the arbitrator's award was in manifest disregard, if it was totally irreconcilable with California law, if, as I submit, the United States life was entitled to rescind the contract, the. Can I can I. You're asking us to make a logical series of steps, which is to take the language of the award, which says the contract is not rescinded, but that the panel has concluded that the season should have acted in a more open and forthright manner. And from that, you translate into the strict, basically, the strict liability or strict remedy proviso of the code that any concealment is results in a right to rescind. And you're saying we should infer from the language of this award that that's the predicate factual finding has been made. And just because they don't put the label of concealment on it, we're bound by California law to infer that label. Isn't that what you're saying? I'm saying that that, plus the fact that the arbitrators decided to reduce my client's liability by $100 million. Well, that shows that in the exercise of their judgment as arbitrators, that they thought some adjustment might be made. And you convert that into a finding of materiality. Well, I think that's correct, Your Honor. When you look at the issues in the case, notwithstanding the voluminous record in this case, there was really only one issue. There was no dispute that the information that we discussed in our brief was not disclosed prior to the consummation of this treaty. The only issue before the arbitrators was that information material. Well, let me ask it this way. Let's suppose they were obliged to write anything down in this award. Generally, arbitrators are not obliged to explain their reasons. But the law is also in ample cases like the Halligan case, which I cited in my brief, that where what the arbitrators do say suggests that they very well may have disregarded the law. Then, absent any further explanation, the court should then is entitled to further guess. In fact, you're getting ahead of me. I'm familiar with the Halligan case and I know what you're arguing. But I'm trying to understand because there's also this rubric about you don't reverse or refuse to enforce arbitration awards where there's been a mistake of law. That's correct, Your Honor. Okay. So if they hadn't said anything and you didn't have these words to hang on, they'd simply come down and made an adjustment after hearing all the evidence and they made the adjustment. Would you be able to argue that it was a manifest disregard as opposed to simply arguably a mistake of law? Yes, I would, Your Honor, because the adjustment has no rational basis to any claim or evidence in the case. The only basis for reformation would be if the contract did not reflect the true intentions of the parties. But that only – that's just another way of saying they made a mistake. The question is, you know, every mistake of law is not a manifest disregard of the law. The question is, how do you separate those two out? And when does it become a manifest disregard? Well, because I cannot frankly – What do the cases say on that? What's the test? The cases do say that the distinction is between the mistake in interpreting the law and the disregard of the law, just an ignoring of the law and making up the arbitrator's own brand of justice. And the problem here is that, you know, there is – it is difficult. I have not been able to articulate in my own mind what the arbitrators could have intended by that, and the other side has not really articulated any logical explanation of what the arbitrators intended other than that. It doesn't seem like that much of a mystery. It seems like what they intended was it wasn't a fraud that should justify rescission, but the parties should have been more open, and therefore, as an equitable matter, they're going to cut the remedy 10 percent. Well, that is in complete disregard of my client's rights under California law. Yeah, but it says that right in the arbitration agreement that they may abstain from following the strict rules of law. Well, I mean, Your Honor, if you don't accept my argument that you have to reconcile the two provisions, the choice of law, with the no strict regard of the law provision, perhaps you're correct, but I believe in light of the master verdict. Well, your side made a deal. They made a deal to arbitrate. Now you're saying, well, there's nothing in the evidence to justify what they did. I don't know what's in the evidence. I haven't reviewed the – what did he say it was, 50,000 pages? What's more, since it's arbitration, I'm not even allowed to. I can't make a decision de novo based on the 50,000 pages of record. I certainly would not ask this Court to do so. I certainly would not ask this Court to make a – you know, reweigh the evidence and come to an opposite conclusion. I'm simply saying what is the legal effect of the finding that they did make, and, you know, under that, there's only one result that's permissible under California law, and the result of that – That's a stretch to call it a finding. Sedan should have acted in a more open and forthright manner. That sounds more like a conclusion in equitable language rather than a finding of fact. Well, Your Honor, this case was not tried to determine whether the superior national entities, you know, had good manners. The issue was, did they fail to disclose material information? The issue was, was this information material? That was a hard-fought, highly disputed issue, and at the end of – And you chose your forum to fight it out in. We chose the forum, but we certainly also retained our rights under the Federal To me, it's like if both sides agreed in a way that was binding upon them to resolve the case according to the law of Belgium, and then when one side was unhappy with it, came to court and said, but it doesn't comply with the laws of California. Well, if they agreed to comply with the laws of Belgium, then I'd have to talk about the laws of Belgium, but they agreed to comply with the laws of California. That's my position. But they agreed just the opposite, that they didn't have to comply with the laws of California. I think that's where – that's where, you know, the issue is drawn, Your Honor, because I recognize there's two provisions. There's one. There's a choice of law provision, and there's a provision that excuses the arbitrators from following the strict rules of law and – of law. Now, how do you reconcile those? If you simply say that they didn't have to follow the law, then the choice of law provision is right out of the contract. That means that they could apply the law of Belgium or Angola or any other country they wished to. And the Mastrobono case was very clear that when you have provisions like this, you have to – I don't know about that. You use the law of California to decide whether they really have an arbitration agreement that's binding or not. But once they have an arbitration agreement, then you use the arbitration agreement to decide what the standards for arbitration are. And particularly in a case like this that requires expertise in commercial matters that neither judges nor juries are likely to have, a highly specialized area and an extremely voluminous factual record, I don't see the difficulty with leaving the arbiters on their own and using California law just to decide whether there was an arbitration agreement. Well, the issue is, did the arbitrators find there was a failure to disclose material facts? I would submit that – Did they make a finding that the – assuming they were material, did they make a finding or is there any evidence to suggest that your folks couldn't have – whichever folks could not have discovered those facts? There was no such finding, but under the – There was no evidence to suggest that they couldn't have found it? Well, that was argued before the arbitrators. There was conflicting evidence on that. And there's no expressed finding about that. Well, is that not fatal to your argument, then? I don't believe so, Your Honor, because under – It doesn't? Well, let me just pose it so you don't add – Pose it precisely so I don't force you to answer in the abstract. Get my copy here. It says that shall communicate all facts within his knowledge which he believes to be material and as to which he makes no warranty and which the other has not the means of ascertaining. So before you get to rescission, don't you – because this is under the required disclosures section, 332. Unless the arbitrators have found that you had – the other has not the means of ascertaining, isn't there a predicate to the automatic application of the rescission right missing? Well, there's a special statute with regard to reinsurance, and that's insurance code section 622, which has a much more stringent standard on the part of seeding companies. Okay. And as I pointed out, that says that when an insurer obtains reinsurance, he must communicate all the representations of the original insurer and also all the knowledge and information he possesses, whether previously or subsequently acquired, which are material to the risk. There's no provision in that statute that deals with whether or not the other side, the reinsurer, has the means to ascertain it. So that's separate and apart from 332? Well, that's a special statute dealing with what a seeding company in a reinsurance context has to provide. And then if you go to the basic general provisions of the California insurance law, insurance code section 330 provides that neglect to communicate that which a party knows and ought to communicate is concealment. You look to 622 to determine what he ought to disclose, and then you go to insurance code section 331, which says, concealment, whether intentional or unintentional, entitles the injured party to... Well, then the short answer is that 622 supersedes... That's correct, Your Honor. ...332. That's correct, Your Honor. Okay. I see I have about two minutes left. Can I just ask one more question on this? If the arbitrators read the clause that Judge Kleinfeld pointed out about not having to follow the strict dictates of the law, I'm paraphrasing, and so therefore they understand that the contract gave them some leeway, then have they made a mistake of fact or a mistake of law that defeats your case? I think so. You're saying that the clauses have to be reconciled. That's correct, Your Honor. Who does that if the arbitrators, in fact, took that fairly explicit mandate to them that says that they don't have to apply the strict rules of law? I think that's... Then why wouldn't that insulate their finding? I think that's a question of law that this Court can review de novo. It's not a question of fact that the arbitrators were... But then they've made a mistake of law. If they misinterpreted the contract? Yeah. Well, I found the language in the Superior Entity's brief, by the way, before the arbitrators, and I just would like to read this because this is what they told the arbitrators. As to the choice of law contract, it says, this provides a, I quote, California law governs not only interpretation of the contract, but also torts and remedies like rescission that arise from the contract. And that's at page 1614. Well, I don't disagree. I understand that. But the question is, then, what does the import of that contractual clause, which tells the arbitrators that they don't have to adhere to the strict rules... Well, I pose the question, and it's an interesting question. And I understand your answer. We'll hear from Apley. Roy Weatherup of Lewis, Brisbois, Discard, and Smith for the Insurance Commissioner of the State of California in his capacity as a public official. Let me briefly address the question of jurisdiction. This case is somewhat unusual in that the district court had before it a jurisdictional motion to dismiss and a motion to vacate an award. And rather than deciding jurisdiction first, the court... Counsel, let's assume that jurisdiction comes first for us. That gets you past that problem. Yes. Does the money come out of the California Treasury if you lose? It may, because as cited in the Apley's brief, Insurance Code Section 1064.5 provides that if the assets of an estate are insufficient to cover the administration of the state by the insurance commissioner, the public funds in the budget for the Department of Insurance can be utilized. And then... When you say it can be utilized, what's that, a matter of discretion with the commissioner? Well, presumably the commissioner will fulfill his legal obligations with respect to his expenses, such as those of employees. But also... You're just talking here about expenses of administration, not expenses of paying off insurance or something. That's right. But the Supreme Court of the United States in the Regents of the University of California case dealt with a very similar issue, where the state treasury was not at risk because of the fact that the state had an indemnity contract with the federal government. And in the Regents' case, the Supreme Court said that even if the state treasury is immune, if it's the character of the action that determines the Eleventh Amendment, now in the Apollo's reply brief, U.S. Life attempts to distinguish Regents on the ground that it's a contract. That's a little different. What you're talking about there is where a third party sues the state. The money will come out of the state treasury. And then the state has a right to indemnity from another party to recover the money that's come out of the treasury. That's right. In this case, no money comes out of the treasury, unless the expenses of administration exceed the assets of the company being liquidated. Well, that's correct. Is that right? But the reasoning of the Regents' case is that one looks at the character of the case, of the litigation or dispute or arbitration in this case. And in that case, it was breach of contract. And the same is true here. In the Apollo's reply brief, U.S. Life contends that that is itself a distinction. Is there any realistic possibility that money will come out of the state treasury? I can't address that. But that's certainly a legal possibility. Usually when an insurance company fails, there's plenty there for administration. There's just not enough to pay the policyholders. Well, that may be true in general. I don't think the record shows in this case what the situation is. But I think the fact is that this is a contract dispute in the arbitration. U.S. Life tried to rescind the contract and to reform it and other relief. And the insurance commissioner wishes to collect the money due under the contract because the commissioner succeeds to the rights of the contracting parties to be paid. Let me move on to the manifesto. Suppose that hypothetically that California was acting in its capacity as a trustee for perhaps as cheated assets and there was no possibility of money coming out of the state treasury. Would the fact that the state of California was the defendant and it was a contract claim be enough so that California could invoke 11th Amendment? I believe so because the test under the regent's case is whether it involves the governmental functions of the state. And that's what is involved here because even as trustee, the insurance commissioner has additional duties as administrator. And those, I think, are decisive. As to manifest disregard of the law and the related doctrines of irrationality and violation of public policy, I think that these are issues that are raised without any substance in existing case law. As the Court has noted, the arbitrators here had extensive authority under the Honorable Engagement Clause to depart from strict rules of law. And the district court in this case found as a matter of fact that there had not been any manifest disregard of the law in light of all of the evidence that was presented to him, including the record of the arbitration proceeding, 50 days of testimony and voluminous exhibits. And the comment on lack of candors is merely a comment on the evidence relating to reformation. It does not require rescission as a matter of law. In order to ---- Well, that doesn't seem very clear from the California statute. And the California statute seems to impose an obligation of disclosure on the insured seeking reinsurance. And it specifies the relief, which is rescission. It's a matter of California law. If it's found to be sufficiently material to justify rescission. It has to be material. Otherwise, why was there a 10 percent reduction? Because that was just part of the reformation remedy. Well, that may be, but it's material, right? It's material enough. It's material to the claim of reformation. But the California law doesn't say that there's a choice between rescission and reformation. What it says, if there's a material nondisclosure, the relief is rescission. The relief may be rescission if the facts are determined such as to allow rescission. But in reformation ---- Concealment, whether intentional or unintentional, entitles the injured party to rescind the insurance. And there were hotly disputed facts about whether anything was concealed. Well, I know it's disputed, but, you know, the only thing that they don't say is that there was concealment. They say there should have been more forthcoming. Yes, and that is a comment on the evidence. And in preparing for oral argument, I came across a case that's very factually similar, where in a reinsurance dispute, the arbitrators made a 10.8 percent reformation of the policy, very similar to what occurred here. And this case is Mutual Fire and Marine and Inland Insurance Company versus NORAD Reinsurance Company Limited, decided by the Third Circuit, 868 F. 2nd. 52, decided in 1989. And this case is not cited in the briefs. But the same argument was made by the appellant, that the action of the arbitrators in refusing rescission but reforming the policies to the extent of 10.8 percent was a manifest disregard of the law, and it was irrational and so forth. And the Third Circuit stated the following at page 56. Appellants claim that the arbitrators' conclusion was not based on their interpretation of the contracts before them, but was an impermissible use of industrial justice providing ground for this Court to vacate the award. We must determine if the form of the arbitrators' award can be rationally derived either from the agreement between the parties or from the parties' submissions to the arbitrators. And the Court analyzed the facts and came to the conclusion that this was a reasonable reformation under the facts before it and that the Court should not second-guess the district court or the arbitrators and stated we conclude that the panel's 10.8 percent reduction was not completely irrational. And in the appellee's brief are cited three California cases in which reformation was employed in a similar manner, not to change the language of the contract, but to change the numbers in light of a differing evidence regarding what the parties actually perceived as to future events. And as the Lipton case cited in the appellee's brief indicates that setting up insurance reserves is a highly subjective field and the fact that ultimately the reserves turn out to be too high or too low is an unpredictable situation. The arbitrators here, there's no mention in the case cited from the Third Circuit as to the Honorable Engagement Clause. The Court there was able to allow the reformation as within the scope of the arbitrators' authorities, even without the Honorable Engagement Clause. But here the Honorable Engagement Clause clearly gives the arbitrators authority to do what they did, which is to change the numbers in the contract. And that was done in the F.P. Cutting case of 1912 cited in the appellee's brief and handed down by the Supreme Court of California. Now, the Mastro Buono case does not establish that there's any conflict between a general provision in the contract on choice of law and a specific provision in a contract whereby the arbitrators are entitled to depart from the strict rules of law. The general clause merely identifies California law for purposes of issues, if there were any, of contract formation and existence. And the Honorable Engagement Clause gives specific authority for the arbitrators to do what they feel is proper in light of all the evidence of the very complicated contractual arrangements that were made in this case many years ago between sophisticated insurance companies. The so we have here a situation where, in their original agreement, the parties agreed that any disputes or differences of opinion would be settled by arbitration. They provided that not just anyone could arbitrate this dispute, but only sitting or retired insurance executives who were familiar with the subject matter of this type of dispute. And they provided a procedure for selecting the arbitrators. And arbitrators were selected, and they heard 50 days of evidentiary hearings receiving massive evidence, and they rejected the claim of rescission. And they did not manifestly disregard the law. Counsel, could you help me? I'm still back on the Eleventh Amendment issue, and I'm still having trouble with it. There's a case we decided. It's called State of California v. Campbell. And in that case, we said, we hold that the Eleventh Amendment does not immunize a receiver who is sued solely in its representative capacity. The Eleventh Amendment does not apply in cases where the entity invoking the immunity is sued only in its representative capacity. Could you tell me exactly why that holding does not apply? Because the insurance commissioner does appear here in a representative capacity, but he also appears in a governmental capacity because he not only holds property, which is what a trustee does, but he also administers that property, and in this case became a party to a pending contract dispute, which involves issues of ---- That doesn't show that they're in a governmental as opposed to representative capacity, as I understand it, because persons who hold property in a representative capacity, such as trustees, litigate contract disputes and administer property all the time. Well, but here it's beyond that. I think the cases cited in the FOE's brief show all the functions of the insurance commissioner, which would include those similar to a trustee and also others as well, such as it's necessary using state funds for administrative purposes and litigating performance of contracts and many other things, and litigating the validity of claims under policies. And it's not just holding the property and give it to someone who may own it. And securing the ---- I don't suppose you saw the escheat case that came down from this Court not too long ago, within the last couple of months. I can't recall specifically. I thought you'd be trying to distinguish it if you had. Yes. Well, I would. Yes, I think I would, but I don't recall the case. The ---- Let me briefly address the rules of review applicable here. According to the cases cited in the APOE's brief, the Court should review the district court's factual findings for clear error. And there doesn't seem to be any room as to these factual findings. The district court specifically stated that the comment on the evidence on which U.S. life rests its whole case does not rise to the level of requiring rescission. And that factual conclusion flowed from that, that there was no manifest disregard of the law, no irrationality, and no violation of public policy. And that in itself, I think, is decisive. And then the argument that by reforming the policy by 10 percent, that this shows irrationality and no manifest disregard for the law, the response there were essentially three responses. First, U.S. life asked for reformation when it initiated arbitration proceedings, and therefore, under the doctrine of invited error, if it was error, they invited it and they cannot complain of it. Secondly, under the mutual fire case that I just cited, in a reinsurance dispute, the Third Circuit held that this, the reformation under the facts of that case was an appropriate substitute for rescission in giving the appellant some relief but not rescission. And that by doing so, there was no irrationality, no manifest disregard for the law. And then the final response is that under California law, beginning with the cutting case almost 100 years ago, a court can reform a written instrument such as a contract by just changing the numbers to reflect what the parties thought and intended at the time. And reformation is not limited merely to changing the language of contracts, and therefore, reformation, in light of all this evidence, was an entirely appropriate remedy legally and certainly can't be said to be outside the scope of the arbitrator's powers. So in summary, this is a case where the parties to a large reinsurance contract negotiated at great length, and when disputes arose years later, they went into arbitration. As they had agreed at the inception, the arbitrators listened to all the evidence. They made their decision. They acted within their powers, and there's no legal basis for vacating their award. Mr. Weatherup, does your client have any interest in whether this case remains sealed? I would have to consult with my client on that point. I don't think the briefs or opinion need to be sealed. I think the desirability of ‑‑ I noticed there was in the record a stipulation on which the district court acted, and I would agree with Mr. Abrahams that the motive for the sealing was the sensitive commercial nature of the information. And ‑‑ but that goal would not apply to the briefs or to this Court's decision. All right. Thank you. Thank you, counsel. Counsel. Thank you. I've got 17 seconds. The reformation, whether it's changing the language or the numbers in the policy, or contract, can only be permitted if, in fact, the numbers or the language don't reflect the intention of the parties. So counsel's intention that it only change the numbers, that's perfectly permissible, is simply without basis. Just really quickly, in terms of money coming from the public treasury, if the reinsurance treaty is rescinded, the money is going to come from the California Insurance Guarantee Association, not the state treasury, and that's not a public entity. It's an entity that basically puts an assessment of all the insurance companies that do business in California. So there's no threat to the public treasury from the outcome of this case. Thank you, Your Honor. Thank you, counsel. Thank you, counsel. Seal 1 versus seal A, which is U.S. Life versus Superior National, is submitted.
judges: Kleinfeld, Tashima, Fisher